UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL KUTZBACK,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case 2:22-cv-02025-JPM-atc |
| v. | ) | |
| | ) | Hon. Jon P. McCalla |
| **RIVIANA FOODS, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT MOTION TO APPROVE FLSA SETTLEMENT

Plaintiff, Michel Kutzback and Defendant, Riviana Foods, Inc. (collectively the "Parties") have reached a settlement in this lawsuit. *See* Settlement Agreement, attached as **Exhibit A**. Accordingly, the Parties hereby file this Joint Motion to Approve FLSA Settlement, and jointly ask the Court to enter a final Order approving the settlement of this action pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") and dismissing this case with prejudice while retaining jurisdiction to enforce the terms of the Parties' settlement.

## BRIEF IN SUPPORT OF JOINT MOTION TO APPROVE SETTLEMENT

**I.    Background and Procedural History**

This is a FLSA collective action lawsuit brought by Plaintiff, Michael Kutzback against his employer, Defendant Riviana Foods, Inc. ("Riviana").  *See* ECF No. 1, generally.  Plaintiff is a non-exempt machine operator who works/worked for Defendant since July 2015.  Defendant is a rice processor, marketer, and distributor with a facility in Memphis, Tennessee.

On January 20, 2022, Plaintiff filed this collective action lawsuit on behalf of himself and those similarly-situated manual laborers that work/worked for Defendant in Tennessee from

August 24, 2018[1] to the present, and alleges violations of the overtime wage provisions of the FLSA *See* ECF No. 1. Specifically, Plaintiff alleges that Defendant implemented and enforced a "rounding" policy and/or practice that resulted in the systematic underpayment of wages for Plaintiff and the putative class. *Id.*

On February 14, 2022, Defendant filed its Answer and Affirmative Defenses. ECF No. 8. Defendant Denies the existence of any FLSA violations. *Id.* Additionally, Defendant asserts, as an affirmative defense, that 1) the work Plaintiff complains about is non-compensable preliminary or postliminary activities; 2) the work Plaintiff complains about constitutes non-compensable *de minimis* activities; 3) Plaintiff's complaint is barred by § 10 of the Portal-to-Portal Act, 29 U.S.C. § 259; 4) Defendant acted in good faith and, therefore, Plaintiff is not entitled to damages for a three-year limitations period for "willful violations"; and 5) Plaintiff is not entitled to liquidated damages. *Id.*

On March 2, 2022, the Parties participated in a Telephonic Conference with the Court where the Parties discussed their respective positions and outstanding issues in detail.

On April 22, 2022, Plaintiff moved to conditionally certify the collective action. *See* ECF No. 15. The Court Granted Plaintiff's Motion for Conditional Certification, and approved class notice for:

> All Current and Former Hourly-Paid employees who worked for Defendant, Riviana Foods, Inc. in Tennessee and were subject to Defendant's rounding policy at any time between August 24, 2018 to the present.

ECF No. 16. Pursuant to the Court's Order, Plaintiff's counsel sent the Court-approved notice to a putative class comprised of 776 members, and the opt-in period commenced for sixty (60) days.

---

[1] Prior to the filing of this lawsuit, the Parties agreed to enter into a class-wide tolling agreement to toll the statute of limitations for the putative class to allow time for pre-litigation investigations.

Ultimately, 341 Plaintiffs joined the Plaintiff by filing their consent to join this collective action. *See* Docket, generally.

Thereafter, the Parties conducted discovery on a representative basis for the named Plaintiff and 34 randomly-selected Opt-in Plaintiffs (i.e. 10% of the collective action class). This included reviewing 12,594 pages of discovery, and 13,510 lines of data on Excel spreadsheets. From this representative discovery, the parties obtained an average number of minutes worked per workweek and average damages owed per workweek from the representative sample. Thereafter, the Parties extrapolated the damages calculations for each Opt-in Plaintiff by multiplying the representative weekly damages owed by the number of workweeks each respective class member worked during the relevant time period while factoring in the period of time that the Parties agreed to toll pursuant to the Parties' tolling agreement.

Seven months after conditional certification, and on November 4, 2022, the parties mediated this matter before Michael Russell, Esq., a veteran wage and hour class and collective action mediator. Despite their best efforts, the Parties did not resolve this matter on November 4th. The Parties, however, continued to negotiate through Mr. Russell for an additional two weeks and, ultimately, reached a settlement for this collective action through the assistance of Mr. Russell on November 22, 2022. The settlement negotiations were conducted in good faith and resulted in a resolution of all claims.

## II.    Claims and Defenses

Plaintiff's Complaint alleges violations of the overtime wage provisions of the FLSA based on Defendant's rounding policy. *See* ECF No. 1. Specifically, Plaintiff alleges that Defendant's rounding policy violates that FLSA because it is not facially neutral. For example, a Class member would not receive any compensation if he clocked-in to work for a period of time up to 15 minutes

before his scheduled shift.  If, however, a Class member came in late, their hours worked would only be rounded back to their scheduled shift if they were to come in up to 6 minutes late. Thus, Plaintiff asserts that Defendant's rounding policy systematically undercompensates employees, in violation of the FLSA. *See* 28 U.S.C. § 785.48(b).  Plaintiffs further maintains that the *de minimis* doctrine is not available as a defense to his claims because there is no practical administrative difficulties of recording the additional compensable time. *See, e.g.*, *Chavez v. Panda Jive, Inc.,* 2012 WL 4459862, at *1 (S.D.N.Y. Sept. 25, 2012) citing *Singh v. City of New York,* 524 F.3d 361, 371 (2d Cir.2008) ("The *de minimis* exception applies, however, only in cases where there is a 'practical administrative difficulty of recording additional time,' such as an employee's commuting time.")

In response, Defendant maintains that their rounding policy is not violative of the FLSA, and Plaintiffs are owed nothing.  Defendant also maintain that the "work" Plaintiff complains about is non-compensable preliminary and postliminary activities, and that Plaintiff's complaint is barred by § 10 of the Portal-to-Portal Act, 29 U.S.C. § 259.  Additionally, Defendant maintains that the Plaintiffs did not actually "work" and could not have actually "worked" for the pre-shift minutes at issue because they worked as machine operators and the machines for which they complete their work on are occupied by other employees until their shift begins.  To that end, Defendant maintains that the policy permitting the Plaintiffs to clock-in before their scheduled shift begins is a policy implemented out of convenience and approved by the local union to allow hundreds of employees to clock-in at the same time where numerous employee shifts begin at the same time.  To the extent the Court disagrees, Defendant asserts that Plaintiff's unpaid "minutes" worked are *de minimis* and, therefore, not compensable. Even if these hours worked were compensable, Defendant also asserts that they acted in good faith and, therefore, Plaintiffs are not entitled to damages for a three-

year period for "willful violations", and also not entitled to liquidated damages.

Despite the many claims and defenses, the Parties have reached a resolution to settle this matter.

### III.    Overview of the Common Fund Settlement Terms

The proposed settlement agreement outlining the specific terms is attached as **Exhibit A**. Defendant will pay $725,000 to settle this collective action ("Settlement Fund"). $471,012.26 of the Settlement Fund constitutes payments to the Plaintiff's Class ("Plaintiff's Class Fund"). The Plaintiff's Class Fund shall be distributed on a *pro rata* basis based on the number of workweeks each class member worked during the relevant time period. The Opt-in Plaintiffs' respective recovery is equally apportioned for backpay and liquidated damages, and outlined in Exhibit A to the Settlement Agreement. *See* Settlement Agreement and Corresponding Exhibit, attached as **Exhibit A**, p. 6.

In essence, each Opt-in Plaintiff's global recovery is more than the total amount that Plaintiff's damages model[2] estimates as being owed for back wages utilizing a three-year statute of limitations, plus an additional amount for liquidated damages. The Opt-in Plaintiffs have obtained a fair and reasonable recovery.

The settlement agreement also provides that the named Plaintiff shall receive an additional $5,000 as a service award, which "are typically awards to class representatives for their often-extensive involvement with a lawsuit." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Numerous courts have authorized such awards as "efficacious ways of encouraging members of a

---

[2] Plaintiff's damages model is based on the average damages owed per workweek as ascertained from the representative sample and extrapolated across all collective action members' respective number of workweeks worked during the relevant time period to generate their individualized damages calculation.

class to become class representatives and rewarding individual efforts taken on behalf of the class."
*Id.; see also Carr v. Bob Evans Farms, Inc.,* 2018 WL 7508650, at *3 (N.D. Ohio July 27, 2018)
(approving $5,000 service award for each named-plaintiff).

The common fund settlement also provides that one-third of the common settlement fund,
or $241,666.67 is attributed to Plaintiff's attorneys' fees, and $ 7,321.08 of the settlement fund is
attributed to Plaintiff's counsels' cost reimbursement.

Again, Defendant denies that the Plaintiffs are entitled to any damages in this matter.
Nevertheless, Defendant desires to settle the Action and the claims asserted in the Action on the
terms and conditions set forth in the Settlement Agreement for the purpose of avoiding the burden,
expense, and uncertainty of continuing litigation, and for the purpose of putting to rest the
controversies engendered by the Action.

The Settlement Agreement provides the Opt-in Plaintiffs with a fair and equitable result
and, therefore, the Court should GRANT the Parties Joint Motion to Approve FLSA Settlement.

## **MEMORANDUM OF LAW**

In accordance with the factual and legal principles outlined above, the Parties respectfully
request the Court approve the Parties' negotiated settlement of Plaintiffs' FLSA claims.  The
instant adversarial action involves disputed factual and legal issues that could provide the Plaintiff
and the collective action members a complete or partial bar to their claims.  Ultimately, the Parties
recognized the significant risks in proceeding to trial with this collective action lawsuit.

The Parties agree that the terms of settlement reached reflect a reasonable "give-and-take"
on the major issues in dispute.  Specifically, Defendant's agreement to make *any* payment to
Plaintiffs reflects a significant concession given its defense and arguments that could result in a
complete bar of any damages.  The settlement also provides that the Plaintiffs may receive payment

under the agreement for workweeks during which they may not be able to show that they worked
*any* overtime hours to the extent the Court finds that this work is compensable in the first place.
The Parties agree that the negotiated terms of settlement reflect a reasonable compromise of all
disputed issues, and that the negotiated settlement is in the Parties' best interest.

Accordingly, the Parties ask the Court to approve the settlement according to the terms of
the settlement agreement and enter an Order of dismissal with prejudice.

## A.      Standard of Review

There are two ways in which FLSA collective action settlements can obtain binding
releases to waive the class members' FLSA claims.  First, § 216(c) of the FLSA allows collective
action settlements and waivers to claims under the FLSA if the payment of unpaid wages by the
employer is supervised by the Secretary of Labor.  *See* 29 U.S.C. § 216(c); *Lynn's Food Stores,
Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982).  Second, § 216(b) of the FLSA allows a Plaintiff
in a collective action to settle and waive claims under the FLSA when a court reviews and approves
a collective action settlement in a private action for back wages.  *See* 29 U.S.C. § 216(b); *See also
Sculte, Inc. v. Gandi*, 328 U.S. 108 (1946).

"The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement
because an FLSA settlement does not implicate the same due process concerns as does a Rule 23
settlement," where "[p]arties may elect to opt in to an FLSA collective, but the failure to do so
does not prevent them from bringing their own suits at a later date."  *Diaz v. Scores Holding Co.,
Inc.*, 2011 WL 6399468, at *2 (S.D.N.Y. July 11, 2011). As the Court in *Risbrook v. Blue
Horseshoe Network, LLC* explained:

> A one-step settlement approval process in FLSA collective actions is appropriate.
> *See Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *2 (N.D.
> Ohio May 4, 2018) (collecting cases). Collective actions under 29 U.S.C. § 216(b)
> require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of

> Civil Procedure 23 class action. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA[.]"). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 class actions. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions).

2020 WL 13441574, at *3 (E.D. Mich. Sept. 4, 2020).

**B.**     **The settlement is a fair and reasonable resolution of *bona fide* disputed claims.**

"In reviewing a settlement of an FLSA private claim, a court must scrutinize the proposed settlement for fairness, and determine whether the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Williams v. K&K Assisted Living LLC*, 2016 WL 319596, at *1 (E.D. Mich. Jan. 27, 2016) (internal quotation marks and citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Simmons v. Mathis Tire & Auto Serv., Inc.*, No. 13-2875-STA-TMP, 2015 WL 5008220, at *1 (W.D. Tenn. Aug. 20, 2015).

The Sixth Circuit has provided guidance on the factors a court may assess in determining whether a proposed class settlement is fair, reasonable, and adequate which include: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Belmont,* 2018 WL 6571145, at *1 (citing *Byers v. Care Transp., Inc.*, 2017 U.S. Dist. LEXIS 25233, at *2 (E.D. Mich. Feb. 23, 2017). The Court, however, may limit its consideration to the factors that are relevant to the instant case. *See Belmont,* 2018 WL 6571145, at *1. "If the settlement is a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement 'in order to promote the policy of encouraging settlement of

litigation.'" *Arrington,* No. 10-10975 (Lawson, J.) (internal quotation marks omitted) (quoting *Lynn's Food Stores Inc.,* 679 F.2d 1350, 1354). In reviewing these factors, the Court may keep in mind that there is a "strong public presumption in favor of settlement." *Pavlov v. Cont'l Cas. Co.,* No. 5:07CV2580, 2009 WL 10689011, at *10 (N.D. Ohio Oct. 7, 2009) (internal citations omitted). "If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Simmons,* 2015 WL 5008220, at *1.

Here, the settlement reached between the Parties is fair and reasonable. The settlement resolves disputed claims between adverse Parties and concludes collective action litigation that would otherwise result in costs that greatly exceed the amount agreed upon between the Parties, given the complexity of issues in this matter. For that reason, the settlement should be approved.

### 1. No Risk of Fraud or Collusion

There is no risk of fraud or collusion. The Parties were represented by experienced counsel, and the settlement was reached through arms-length negotiations after mediation and weeks of additional negotiations through an experienced collective action mediator, Michael Russell of Miles Mediation and Arbitration. Indeed, Courts in this circuit and beyond have consistently held that "[t]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Bert v. AK Steel Corp.,* No. 1:02–cv–467, 2008 WL 4693747, at *2 (S.D. Ohio Oct.23, 2008); *See also Carter v. Anderson Merchandisers, LP*, 2010 WL 1946784, *6 (C.D. Cal. May 11, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *In re Telectronics Pacing Sys.,* 137 F.Supp.2d 985, 1013 (S.D. Ohio 2001); *Swigart v. Fifth Third Bank,* 1:11-CV-88, 2014 WL 3447947, at *2 (S.D. Ohio 2014). Therefore, this factor favors approval of settlement.

**2. The Complexity, Expense and Duration of the Case**

The Parties began discussing this collective action and agreed to enter into a tolling agreement on a class-wide basis in approximately August 2021, and ultimately reached a settlement 15 months later and in November 2022. Various issues remain and, at a minimum, the Court will need to analyze the following issues if this matter were not resolved: 1) Whether the Plaintiffs are similarly-situated for purposes of decertification; 2) whether Defendant's rounding policy violates the FLSA; 3) whether the "work" Plaintiff complains about is compensable or non-compensable preliminary and postliminary activities; 3) whether the "work" Plaintiff complains about is compensable or *de minimis*; 4) whether the Plaintiffs actually worked during these pre-shift minutes; 5) whether Plaintiffs are entitled to liquidated damages; and 6) whether a 2-year or 3-year statute of limitations applies to Plaintiff's claims. In addition, a jury would need to determine the number of hours "worked" by the Plaintiffs, which is vehemently disputed by the Defendant.

The parties would also have expended significant time and resources if this matter were not resolved, which includes but is not limited to depositions, dispositive motion practice, decertification motion practice, and preparation for trial. Therefore, the complexity, expense, and length of continued litigation weighs in favor of this settlement.

**3. Amount of Discovery Engaged in by the Parties**

The Parties have conducted a sufficient amount of discovery in this matter to enable the Parties to assess their case and the desirability of the proposed settlement. During the March 2, 2022 telephonic conference with the Court, the Parties discussed their intent to proceed with class discovery on a representative basis for this collective action, and the Court confirmed that proceeding with representative discovery is acceptable in this matter. Thereafter, the Parties

conducted discovery on a representative basis for the named Plaintiff and 34 randomly-selected Opt-in Plaintiffs, or 10% of the collective action class. This included reviewing **12,594** pages of discovery, and 13,510 lines of data on Excel spreadsheets. From this representative discovery, the parties obtained an average number of minutes worked per workweek and average damages owed per workweek from the representative sample. Thereafter, the Parties extrapolated the damages calculations for each Opt-in Plaintiff by multiplying the representative weekly damages owed by the number of workweeks each respective class member worked during the relevant time period. The parties conducted adequate discovery of the available information and reached a fair and reasonable resolution of this matter through an experienced wage and hour mediator.

### 4. The Likelihood of Success on the Merits

Plaintiffs' likelihood of success on the merits along with any damages awarded is unclear. Defendant maintains that 1) Plaintiffs are not similarly-situated; 2) its rounding policy does not violate the FLSA, 2) the "work" Plaintiff complains about is non-compensable preliminary and postliminary activities; 3) the "work" Plaintiff complains about is *de minimis*; 4) the Plaintiffs were not/could not actually work during these pre-shift minutes; 5) liquidated damages are not appropriate; and 6) Defendant acted in good faith to avoid the imposition of willfulness damages. If the Court were to find in Defendant's favor, Plaintiffs would not obtain any recovery.

Here, the settlement entitles each of the opt-in Plaintiffs to recover an amount that exceeds their full back wage damages estimate utilizing a three-year statute of limitations. The Opt-in Plaintiffs have obtained a fair and reasonable recovery.

### 5. Opinion of Class Counsel and the Class Representatives

This Court must consider the opinion of the experienced trial counselors who have evaluated the strengths of the case. *See Levell v. Monsanto Research Corp.,* 191 F.R.D. 543, 557

(S.D. Ohio 2000) (internal citations and quotation marks omitted) ("When considering a proposed settlement, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs'"). Counsel for both Parties possess extensive experience in FLSA collective action litigation, and hold the opinion that settlement is in the best interest of all Parties involved, including the Opt-In Plaintiffs. The collective action Representative, named Plaintiff Michael Kutzback, likewise holds the opinion that the settlement is in the best interest of the Plaintiffs.

### 6.  The Reaction of Absent Class Members

"The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, at *31, 2008 WL 3981461 (N.D. Ohio Aug. 22, 2008) (citation omitted); *Belmont*, 2018 WL 6571145, at *1 (same). As this is a collective action under the FLSA, and not a Rule 23 Class action, there are no "absent" class members. Indeed, the FLSA provides that no party may be bound by a settlement unless they "opt in'' to the case. *See* 29 U.S.C. §216(b). Here, there are no "absent" class members and, thus, this factor weighs in favor of approving the settlement.

### 7.  The Public Interest

There is a "strong public presumption in favor of settlement." *Pavlov v. Cont'l Cas. Co.*, 2009 WL 10689011, at *10 (N.D. Ohio Oct. 7, 2009) (internal citations omitted). Indeed, "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). "Particularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that the Eleventh Circuit Court

of Appeals "favor[s] and encourage[s] settlements in order to conserve judicial resources."); *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 530 (E.D. Mich. 2003) (internal quotation marks and citations omitted) ("…there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources").  Here, the Parties' voluntary settlement agreement serves the public interest while preserving judicial resources.

### 8. Application of All Seven Factors Demonstrates the Settlement is Fair and Reasonable

In this case, all seven factors point to a determination that the proposed settlement is "fair and reasonable".  Accordingly, the Parties ask the Court to approve the settlement according to the terms of the settlement agreement and enter an Order of dismissal with prejudice.

### C.    Plaintiff's Counsel is entitled to the requested attorneys' fees and costs.

In addition to the amounts allocated to the Plaintiffs under the settlement, the Court also evaluates the reasonableness of the attorneys' fees payable to Plaintiffs' counsel under the settlement.  Here, the amounts are fair and reasonable in light of the facts of this case and thus the Court is due to approve them as well.

In an FLSA case, an award for reasonable attorney fees to a prevailing plaintiff is mandatory.  *See* 29 U.S.C. § 216(b); *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). The Sixth Circuit in *Fegley* summarizes the important policy objectives behind the FLSA attorney fee provision, and states:

> The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourages the vindication of congressionally identified policies and rights.  Indeed, we have upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.

*Id.* at 1134 – 35 (internal citations and quotations omitted).

The mandatory fee award should also be reasonable. "The FLSA provides that, if the court enters judgment in favor of a plaintiff on a claim of unpaid overtime in violation of the Act, '[t]he court in such action shall ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'" *Rembert v. A Plus Home Health Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021) (quoting 29 U.S.C. § 216(b)). "A reasonable fee should be adequate to attract competent counsel but avoid providing a windfall for attorneys." *Smyers v. Ohio Mulch Supply Inc.,* No. 21-3008, 2021 WL 2774665, at *2 (6th Cir. July 1, 2021) *citing Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).

In an FLSA collective action, "[t]he Court has discretion to select one of two methods to calculate reasonable attorney's fees in a common fund case: either by using a percentage-of-the-fund calculation or a lodestar multiplier." *Carr v. Bob Evans Farms, Inc.,* 2018 WL 7508650, at *3 (N.D. Ohio July 27, 2018) citing *Rawlings v. Prudential–Bache Props.*, 9 F.3d 513, 516-17 (6th Cir.1993) (emphasis added); *see also Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F.App'x 496, 498 (6th Cir. 2011). The Sixth Circuit has approved both methods. *See, e.g.*, *Rawlings*, 9 F.3d at 515–16. A court can independently validate the reasonableness of attorney fees under either method, and it need not apply both. *See Gascho v. Glob. Fitness Holdings, LLC,* 822 F.3d 269, 297 (6th Cir. 2016) (Observing in a consumer class action that the Sixth Circuit has "repeatedly upheld a district court's determination that a fee award is reasonable based solely on a lodestar analysis" without conducting a percentage-of-the-fund cross-check).

The Sixth Circuit has instructed the district courts to "select the more appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them. . ." *Rawlings*, 9 F.3d at 516.

a. **The percentage of the fund approach is the "most appropriate" method for determining reasonable attorneys' fees in FLSA common fund collective action settlements, like here.**

In answering the Sixth Circuit's instructions to "select the more appropriate method for calculating attorney's fees", *Rawlings*, 9 F.3d at 516, district courts within the Sixth Circuit have consistently opined that the "the percentage approach is **the most appropriate method** for determining reasonable attorneys' fees in wage and hour cases…" *Hebert*, 2019 WL 4574509, at *4 (emphasis added) (internal citations and quotation marks omitted); *see also Fitzgerald v. P.L. Mktg., Inc.,* 2020 WL 3621250, at *10 (W.D. Tenn. July 2, 2020) ("The 'percentage of the fund has been the **preferred method** for common fund cases, where there is a single pool of money and each class member is entitled to a share (i.e., a 'common fund').") (emphasis added) (internal citations and quotation marks omitted); *Daoust v. Maru Rest., LLC,* 2019 WL 2866490, at *5 (E.D. Mich. July 3, 2019); *Kimber Baldwin Designs, LLC v. Silv Commc'n, Inc.*, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017); *Swigart v. Fifth Third Bank,* 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014); *Lonardo v. Travelers Indem. Co.,* 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010).

As the Sixth Circuit explained in *Rawlings*:

> The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation.

9 F.3d at 516.  To that end, district courts within the Sixth Circuit criticize the use of the lodestar method under circumstances like those at bar.  For example, in *Salinas v. U.S. Xpress Enterprises, Inc.*, the Eastern District of Tennessee explained:

> Even in cases where statutory attorney's fees attach, such as the FLSA, the percentage-of-recovery doctrine is still the preferred manner to calculate attorney's fees. The lodestar method, whereby the attorney's time is multiplied by the reasonable hourly rate, remains *disfavored* because "regardless [of] how a total settlement structure is formally structured ... every dollar given to class

15

> counsel means one less dollar for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 821-822 (rejecting lodestar fee and directing that percentage-of-recovery should have been utilized even though the agreement for fees was ostensibly distinct from the agreement to pay class members because of the "economic reality" of such arrangement); *Dewey v. Volkswagen Aktiengesellschaft*, 558 Fed. Appx. 191, 199 (3d Cir. 2014) (affirming settlement, overruling objectors, and holding that the district court properly used a percentage-of-the-fund calculation in computing fees despite the fact that the underlying statute provided for attorney's fees to the prevailing party).

2018 WL 1477127, at *9 (E.D. Tenn. Mar. 8, 2018), *report and recommendation adopted*, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018); *See also Rawlings*, 9 F.3d at 516-517 ("[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources. *Shalala,* 1 F.3d at 1269–70; *Task Force Report* at 250. District courts must pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier. With the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement. *Shalala,* 1 F.3d at 1268–69; *Task Force Report* at 247–48."). Similarly, in *In re Cardinal Health Inc. Sec. Litigations*, the court reasoned:

> The lodestar method has been rightly criticized for generating avoidable hours, discouraging early settlement, and burdening district judges with the tedious task of auditing time records. *Goldberger,* 209 F.3d at 48–49. Because attorneys are paid based on the amount of hours they work, there is an incentive to over-litigate or "churn" cases. *Microstrategy,* 172 F.Supp.2d at 787. Rather than reward attorneys for achieving the best outcome for the class, or for doing so quickly and efficiently, the lodestar instead rewards attorneys for the number of hours that they work, regardless of whether such hours provide the maximum benefit to the class. In most industries, organizations strive for the best output while devoting the fewest number of resources possible. Imprisoned by the billable hour, the lodestar encourages just the opposite. Then, to protect the class's fund from unnecessary attorney padding, the Court must endure time-consuming parsing of reams of attorney time sheets and hindsight recalculations to determine the proper amount of work and charges. *AOL,* 2006 U.S. Dist. LEXIS 78101, at *26.

528 F. Supp. 2d 752, 761 (S.D. Ohio 2007).

16

In line with this well-established authority, the Parties requests the Court adopt the use of the percentage-of-the-fund method to assess the reasonableness of the attorneys' fee award provided in the settlement agreement here.

**1. One-third of the common fund is the standard attorneys' fee award in FLSA collective action common fund settlements.**

"When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are one-third of the total settlement." *Macaluso v. Zirtual Startups, LLC*, No. 2:19-CV-3616, 2021 WL 3639665, at *4 (S.D. Ohio Aug. 17, 2021); *see, e.g., Daoust v. Maru Rest., LLC,* No. 17-CV-13879, 2019 WL 2866490, at *5 (E.D. Mich. July 3, 2019) (Awarding plaintiff's counsel $483,333.33, or one-third of the common fund in an FLSA collective and class wage and hour settlement, and finding that "the amount of fees requested is fair and reasonable using the 'percentage-of-recovery' method, **which is consistent with the 'trend in this circuit**.'") (citing *Rawlings*, 9 F.3d at 516) (emphasis added); *Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) ("The amount of the contingency, one-third of the total award, is also reasonable and has been approved in similar FLSA collective actions…") (collecting cases); *Carr,* 2018 WL 7508650, at *4 (Awarding plaintiff's counsel $1 million in attorneys' fees, which equates to one-third of the common fund, and recognizing that "[i]n FLSA collective actions in Ohio, courts have **almost uniformly** awarded attorney's fees that constituted one-third of the fund") (emphasis added); *Fitzgerald*, 2020 WL 3621250, at *10 (awarding plaintiff's counsel a $525,000 fee award, which equates to one-third the common fund in FLSA collective and class action); *Hebert,* 2019 WL 4574509, at *8 ("In sum, 33% is typical for attorney's fees in common fund, FLSA collective actions in this District, though a fee award in a particular case may be higher or lower based on unique circumstances in a particular case."); *Ganci v. MBF Inspection Servs., Inc.,* No. 2:15-CV-2959, 2019 WL 6485159, at *8 (S.D. Ohio Dec. 3, 2019) ("Class Counsel shall

receive attorney's fees in the amount of one third of the gross settlement amount, $741,666.67.");

*Salinas,* 2018 WL 1477127, at *11, *report and recommendation adopted*, 2018 WL 1475610 (E.D.

Tenn. Mar. 26, 2018) (approving 40% of the common fund in FLSA Collective Action settlement);

*Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018);

*Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-CV-1608, 2010 WL 2490989, at *7-8 (N.D.

Ohio June 15, 2010).

Additionally, "[a] contingency fee arrangement often justifies an increase in the award of

attorney's fees." *In re Sunbeam,* 176 F. Supp. 2d 1323, 1335 (S.D. Fla. 2001 (quoting *Behrens v.

Wometco Ent., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988).  Indeed, "[l]awyers who are to be

compensated only in the event of victory expect and are entitled to be paid more when successful

than those who are assured of compensation regardless of result." *Jones v. Diamond,* 636 F.2d

1364, 1382 (5th Cir.1981) (overruled on other grounds); *see also In re Continental Ill. Sec. Litig.,*

962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a

contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment);

*Ressler v. Jacobson,* 149 F.R.D. 651, 656 (M.D. Fla. 1992) ("Numerous cases recognize that the

attorney's contingent fee risk is an important factor in determining the fee award."). As Judge King

from the Southern District of Florida observed:

> Generally, the contingency retainment must be promoted to assure representation
> when a person could not otherwise afford the services of a lawyer.... A contingency
> fee arrangement often justifies an increase in the award of attorney's fees. . . . This
> rule helps assure that the contingency fee arrangement endures. If this "bonus"
> methodology did not exist, very few lawyers could take on the representation of a
> class client given the investment of substantial time, effort, and money, especially
> in light of the risks of recovering nothing.

*Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd sub*

*nom. Behrens v. Wometco Enterprises,* 899 F.2d 21 (11th Cir. 1990).

In line with this well-established authority, the Parties respectfully requests the Court approve Plaintiff's request for attorneys' fees in the amount of one-third of the common fund. Here, Plaintiff's counsel effectively and efficiently resolved this matter without causing Defendant's counsel to expend additional time defending it, which would have increased Defendant's investment in the defense of the case and potentially decrease the settlement funds available to the settlement class. Defendant's counsel asserted defenses to Plaintiffs' claims; defenses which could have presented a *total defense* to the claims at issue in this litigation. Despite these potential defenses, Plaintiffs' counsel pursued Plaintiffs' claims and successfully negotiated a favorable settlement through the assistance of an experienced mediator. Plaintiff and the class members have all benefited from Plaintiffs' counsel's efforts.

The settlement agreement provides for attorneys' fees that equate to one-third of the common fund. The Parties agree this is a fair and reasonable amount to be allocated for fees, which is in line with the "uniform" Sixth Circuit authority provided. Accordingly, the Parties respectfully requests the Court Grant the Parties' Joint Motion to Approve settlement, and award Plaintiff's counsel attorney's fees in the amount of one-third of the common fund.

### 2. Plaintiff's counsel is entitled to reimbursement for all expenses reasonably incurred in prosecuting this nationwide collective action.

The FLSA provides that, if the court enters judgment in favor of a plaintiff on a claim of unpaid overtime in violation of the Act, '[t]he court in such action shall ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'" *Rembert v. A Plus Home Health Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021) (quoting 29 U.S.C. § 216(b)).

As this Court has previously held, "[t]he prevailing party in an FLSA case is entitled to all reasonable costs of litigation." *Monroe v. FTS USA, LLC,* 2020 WL 13227389, at *9 (W.D. Tenn. Oct. 13, 2020) (Fowlkes, J.), *aff'd,* 17 F.4th 664 (6th Cir. 2021), *cert. denied,* 142 S. Ct. 1232

(2022), citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.2d 955, 969 (10th Cir. 2002) (recognizing that recoverable costs under the FLSA "can include costs beyond those normally allowed under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920," such as reasonable out-of-pocket expenses) (citing *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989) (holding that the FLSA authorizes an award of costs as part of a "reasonable attorney's fee," which would otherwise not be authorized under Rule 54 or 28 U.S.C. § 1920)).[3]

"To the extent that costs are not recoverable in accord with § 1920, a prevailing party in a [FLSA] case may still recover under 29 U.S.C. § 216(b)." *Monroe v. FTS USA, LLC,* No. 2:08-CV-02100-JTF-CG, 2014 WL 4472706, at *2 (W.D. Tenn. Sept. 10, 2014) (Fowlkes, J.), citing 29 U.S.C. § 216(b).

Aside from agreeing to take on this collective action on a contingency basis, Morgan & Morgan, P.A. also agreed to advance all costs incurred in connection with this action. It is worth noting that, because law firms have finite resources, the acceptance of this case precluded Plaintiff's Counsel's firm from accepting some other actions as well as investing such monies paid in costs here in other matters.

Here, Plaintiff requests reimbursement in the amount of $7,321.08. This amount is comprised of the following expenses:

| | |
|---|---|
| Filing fee | $402 |
| Cost of Mediation | $4,800 |

---

[3] *See also Fitzgerald v. P.L. Mktg., Inc.,* 2020 WL 3621250, at *11 (W.D. Tenn. July 2, 2020) (awarding expenses including the cost of a third-party administrator, mediation-related expenses, travel expenses, and the cost of retaining an expert, in addition to filing fees, service fees, etc.); *Johnson v. W2007 Grace Acquisition I, Inc.,* 2015 WL 12001269, at *14 (W.D. Tenn. Dec. 4, 2015) (awarding expenses in class action for "research costs, expert fees, and administrative costs").

|  |  |
|---|---|
| Text Magic[4] | $333.94 |
| Cost for past Mailing (i.e. notice, reminder notice) | $1,568.14 |
| Anticipated cost of mailing the settlement checks | $217 |
| TOTAL COSTS | $7,321.08 |

These costs are all reasonable and should be awarded pursuant to the parties' settlement agreement.

## V.    CONCLUSION

The Parties agree that the settlement, the terms of which are set forth in **Exhibit A**, is a fair and reasonable resolution of a *bona fide* FLSA dispute.  As such, the Parties jointly request that this Court approve the settlement and enter the order attached hereto as **Exhibit B**.

WHEREFORE, Plaintiffs and Defendant respectfully move this Court for entry of an Order (i) Granting this Motion; (ii) approving the settlement of this matter; and (iii) Dismissing this action in its entirety with prejudice and without further costs and fees.

Respectfully submitted this 11th day of January, 2023,

| | |
|---|---|
| /s/ *Michael N. Hanna, Esq.* | /s/ *Louis P. Britt* |
| MICHAEL N. HANNA | Louis P. Britt    #5613 |
| Fla. Bar No. 85035 | Frank L. Day     #25345 |
| Mich. Bar No. P81463 | Mollie K. Wildmann #037012 |
| MORGAN & MORGAN, P.A. | **FORDHARRISON LLP** |
| 2000 Town Center, Suite 1900 | 1715 Aaron Brenner Drive, Suite 200 |
| Southfield, MI 48075 | Memphis, Tennessee 38120 |
| (313) 739-1950 | (901) 291-1500 |
| mhanna@forthepeople.com | lbritt@fordharrison.com |
| | fday@fordharrison.com |
| *Attorneys for Plaintiff* | mwildmann@fordharrison.com |
| | |
| | *Attorneys for Defendant* |

---

[4] "Text Magic" is an app Plaintiff's counsel utilized to assist in disseminating class notice via text messages to the putative class comprised of 776 members on two occasions for the initial dissemination of the class notice and a second time for disseminating a reminder notice.